RE: OWNERSHIP OF IMPROVEMENTS PLACED ON REAL ESTATE WHICH REVERTS TO GRANTOR; REQUIREMENTS UPON SALE OF REAL ESTATE BY MUNICIPALITY.
ATTORNEY GENERAL HENRY HAS ASKED ME TO RESPOND TO YOUR LETTER OF SEPTEMBER 8, 1989, REQUESTING AN INFORMAL OPINION REGARDING AND CONVEYED BY A MUNICIPALITY TO BE USED FOR A COUNTY HEALTH DEPARTMENT, SAID LAND REVERTING TO THE MUNICIPALITY IF IT CEASES TO BE USED FOR COUNTY HEALTH DEPARTMENT PURPOSES. YOUR QUESTIONS ARE:
 1. WHEN THE PROPERTY CEASES TO BE USED FOR HEALTH DEPARTMENT PURPOSES, DOES IT REVERT BACK TO THE CITY ALONG WITH ANY IMPROVEMENTS THAT HAVE BEEN PLACED THEREON, OR ARE THE IMPROVEMENTS OR THE VALUE THEREOF SEVERABLE; AND
 2. WITH REGARD TO THE REAL PROPERTY, IF THE MUNICIPALITY DECLARES SAID REAL PROPERTY TO BE SURPLUS, MAY THE MUNICIPALITY CONVEY THE REAL PROPERTY TO THE COUNTY FOR A NOMINAL VALUE OR IS THE CITY REQUIRED TO ADVERTISE SAID PROPERTY AND SELL IT FOR ITS HIGHEST AND BEST PRICE TO FULFILL THE FIDUCIARY DUTY OF THE CITY?
THE ANSWERS TO YOUR QUESTIONS DEPEND IN LARGE PART ON FACTS PECULIAR TO THE SITUATION DESCRIBED. NEVERTHELESS, I BELIEVE THAT THE FOLLOWING REMARKS, EVEN THOUGH THEY ARE ONLY MY OPINION, WILL BE OF SOME ASSISTANCE TO YOU.
FOR AN ANALYSIS OF YOUR FIRST QUESTION, THE STARTING POINT IS 60 O.S. 334 (1981), WHICH STATES IN PERTINENT PART: "WHEN A PERSON AFFIXES HIS PROPERTY TO THE LAND OF ANOTHER WITHOUT AN AGREEMENT PERMITTING HIM TO REMOVE IT, THE THING AFFIXED BELONGS TO THE OWNER OF THE LAND, UNLESS HE CHOOSES TO REQUIRE OR PERMIT THE FORMER TO REMOVE IT." IN THE SITUATION YOU DESCRIBE, THE COUNTY OWNS A DEFEASIBLE FEE WHICH IS SUBJECT TO A REVERSION OWNED BY THE MUNICIPALITY. AS A GENERAL RULE, BUILDINGS AND IMPROVEMENTS ATTACHED TO THE LAND BECOME PART OF THE REAL ESTATE AND WOULD GO TO THE OWNER OF THE REVERSION AT THE TERMINATION OF THE PRECEDENT ESTATE. HOWEVER, THE COURTS HAVE CREATED AN EXCEPTION TO 60 O.S. 334 WHEN THE IMPROVEMENTS HAVE BEEN PAID FOR WITH PUBLIC FUNDS. THE CASE OF SEWELL V. REINHARDT, 219 P. 2D 996 (OKLA. 1950), INVOLVED A SCHOOL BUILDING BELONGING TO AN INDEPENDENT SCHOOL DISTRICT ERECTED ON LAND DEEDED TO THE SCHOOL DISTRICT BY A DEED CONTAINING A REVERSION CLAUSE. THE DEED PROVIDED THAT THE TRACT WAS TO BE USED FOR SCHOOL PURPOSES ONLY, AND THAT WHEN IT CEASED TO BE USED FOR SCHOOL PURPOSES, IT SHOULD REVERT TO THE GRANTORS OR THEIR HEIRS. THE COURT DETERMINED THAT THE SCHOOL HOUSE DID NOT BECOME A FIXTURE AND PASS TO THE FORMER OWNER BY THE REVERSION CLAUSE BUT REMAINED THE PROPERTY OF THE SCHOOL DISTRICT.
THE COURT REASONED IN THE SEWELL CASE THAT ALLOWING THE BUILDING TO BECOME A FIXTURE AND REVERT TO THE GRANTOR WOULD VIOLATE THE OKLAHOMA STATUTES WHICH GAVE THE SCHOOL BOARD AUTHORITY TO SELL AND DISPOSE OF PROPERTY. THE COURT CITED AND FOLLOWED THE CASE OF DERIEG V. BOARD OF EDUCATION, 216 P.2D 307 (OKLA. 1950). THE DERIEQ CASE, ALSO INVOLVING A SCHOOL BUILDING, LEANED HEAVILY ON THE PREMISE THAT FUNDS OF THE SCHOOL DISTRICT ARE DERIVED FROM TAXATION, AND THE PROPERTY IN WHICH THOSE FUNDS ARE INVESTED IS A PUBLIC TRUST. THE COURT RULED THAT THE PROVISIONS OF 60 O.S. 334 COULD NOT BE INVOKED TO — DESTROY SUCH TRUSTS, SAYING THAT TO APPLY 60 O.S. 334 WOULD REQUIRE THE SCHOOL BOARD TO VIOLATE ITS TRUST AND EXCEED ITS AUTHORITY.
I HAVE FOUND NO CASES ON THIS ISSUE INVOLVING IMPROVEMENTS MADE BY COUNTIES. THE QUESTION, THEN, IS WHETHER THE ABOVE MENTIONED SCHOOL CASES WOULD APPLY OR WHETHER THEY ARE DISTINGUISHABLE FROM THE SITUATION IN QUESTION. THEY DIFFER IN THAT THEY DEAL ONLY WITH SCHOOL DISTRICTS, YET THERE ARE MANY SIMILARITIES BETWEEN SCHOOL DISTRICTS AND COUNTIES. COUNTIES, LIKE SCHOOL DISTRICTS, DERIVE FUNDS FROM TAXATION. THE OKLAHOMA CONSTITUTION SPECIFICALLY PROVIDES THAT A COUNTY MAY LEVY AD VALOREM MILLAGE FOR THE PURPOSE OF MAINTAINING OR AIDING IN MAINTAINING A DEPARTMENT OF HEALTH. CONST. ARTICLE X, SECTION 9A. COUNTIES, BY VIRTUE OF 19 O.S. 1(3) (1988), ARE ALSO EMPOWERED TO SELL AND CONVEY REAL PROPERTY BELONGING TO THE COUNTY, THE POWER TO SELL BEING AN IMPORTANT FACTOR IN THE SEWELL CASE. THE CASES CAN BE DISTINGUISHED ON THE FACT THAT THE REVERSION IN BOTH DERIEQ AND SEWELL WENT TO INDIVIDUALS, WHEREAS IN THE PRESENT SITUATION THE REVERSION GOES TO A PUBLIC ENTITY. HOWEVER, GIVEN THE REASONING IN THE TWO CASES, IT IS DOUBTFUL THAT SUCH A DISTINCTION WOULD BE SIGNIFICANT, BECAUSE THE PUBLIC ENTITY, A MUNICIPALITY, IS NEVERTHELESS SEPARATE AND DISTINCT FROM THE COUNTY AND SUPPORTED BY A DIFFERENT TAX BASE.
WHILE THERE IS NO LAW DIRECTLY ON POINT, IT IS NOT UNREASONABLE TO ASSUME THAT THE RATIONALE OF THE SEWELL AND DERIEQ CASES COULD BE USED TO REACH THE SAME RESULT WHERE IMPROVEMENTS HAVE BEEN MADE BY A COUNTY. ONE OF THE RELEVANT FACTS, ALTHOUGH NOT NECESSARILY CONTROLLING, IS WHETHER OR NOT THE PARTICULAR IMPROVEMENTS IN QUESTIONS WERE PAID FOR WITH PUBLIC FUNDS.
IN CONSIDERING YOUR SECOND QUESTION, YOU SHOULD BE AWARE THAT THERE MAY BE PROVISIONS IN THE CITY CHARTER WHICH CONTROL OR AFFECT THE SITUATION. CHARTER PROVISIONS ASIDE, THE STATE'S STATUTES GOVERNING MUNICIPALITIES DO NOT CONTAIN PROVISIONS FOR DECLARATION OF REAL ESTATE AS SURPLUS. MUNICIPALITIES ARE GRANTED BY STATUTE THE POWER TO SELL REAL ESTATE. TITLE 11 O.S. 22-101(3) (1981) STATES THAT ALL INCORPORATED MUNICIPALITIES SHALL HAVE THE POWER TO "SELL AND CONVEY ANY REAL OR PERSONAL PROPERTY OWNED BY THE MUNICIPALITY AND MAKE ORDERS RESPECTING THE SAME AS MAY BE CONDUCIVE TO THE BEST INTERESTS OF THE MUNICIPALITY." (EMPHASIS ADDED.) THE EMPHASIZED PORTION OF THE PROVISION IMPLIES A DUTY TO USE THE POWER TO SELL TO FURTHER THE "BEST INTERESTS" OF THE CITY. IN MOST CASES, IT WOULD BE IN THE BEST INTERESTS OF THE CITY TO OBTAIN THE HIGHEST AND BEST PRICE POSSIBLE IN ANY SALE. THAT DOES NOT PRECLUDE THE POSSIBILITY OF A SITUATION IN WHICH IT WOULD BE IN THE BEST INTERESTS OF THE CITY TO CONVEY PROPERTY FOR A NOMINAL PRICE IN EXCHANGE FOR SOMETHING WHICH WOULD BE OF VALUE TO THE CITY. THE CITY'S CHARTER SHOULD BE EXAMINED FOR ANY RESTRICTIONS OR GUIDELINES IN THIS REGARD.
YOU SHOULD ALSO BE AWARE THAT THERE IS CASE LAW WHICH LIMITS A MUNICIPALITY'S POWER TO DISPOSE OF PROPERTY HELD BY IT FOR THE PUBLIC USE AND BENEFIT OF ITS CITIZENS. REMY V. AGAR, 559 PP.2D 1235 (OKLA. 1977). THE LAW MAKES A DISTINCTION BETWEEN PROPERTY HELD BY THE MUNICIPALITY FOR ITS USE AS AN ENTITY AND PROPERTY HELD FOR PUBLIC USE. DETERMINING THE APPLICABLE CLASSIFICATION OF THE PROPERTY IN QUESTION TURNS UPON FACTUAL ISSUES PECULIAR TO THIS PARTICULAR MUNICIPALITY AND THE SPECIFIC LAND IN QUESTION.
I THINK YOU CAN APPRECIATE THAT THERE IS NO GENERAL RULE OF LAW WHICH WILL ANSWER YOUR QUESTION DEFINITIVELY WITHOUT REGARD TO THE CIRCUMSTANCES. THE FOREGOING REMARKS CONSTITUTE MY BEST ASSESSMENT OF THE APPLICABLE LAW AND ITS IMPLICATIONS FOR YOUR QUESTIONS. IF YOU HAVE FURTHER QUESTIONS, PLEASE FEEL FREE TO CALL ME.
(GAY ABSTON TUDOR)